DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[S. F. No. 85. Department Two.—August 12, 1896.]

## WILLIAM BADDELEY, Respondent, v. JAMES SHEA, Appellant.

NEGLIGENCE—LATENT DEFECT IN PLATFORM IN FRONT OF DWELLING— INJURY TO CARRIER OF HEAVY TRUNK—OWNER NOT LIABLE.—Where a servant of a transfer company was injured by the breaking of a platform in front of a private dwelling, while carrying a heavy trunk on his back, which he had refused assistance in carrying, and the evidence shows without conflict that the front steps, including the platform, were built seven or eight years before the accident by a competent and skilled carpenter and builder, and was well constructed and of good materials, which would ordinarily wear sixteen or twenty years without repair, that it had been repainted every year, and that it appeared to the owner and those who had passed over it to be perfectly sound and safe up to the time of the accident, and that the owner had no knowledge that it was unsound, unsafe, or defective until after the accident, the owner is not liable for the injury.

ID.—CONCEALED DEFECTS OF WORKMANSHIP—ORDINARY WEAR AND TEAR— EXTRAORDINARY CARE.—Those latent defects which are either concealed in defective workmanship, or are incident to the ordinary wear and tear of houses, are among the casualties which no man can avoid without that extraordinary care and vigilance which the law does not impose.

ID.—NO DUTY TO INSPECT PLATFORM—PARTIAL DECAY UNDERNEATH.— Where the platform was constructed in a good and substantial manner, and gave no indication of being unsafe or unsound up to the time of the accident, the owner of the dwelling was under no legal obligation to have the platform inspected from time to time, and is not liable for a defect in the platform which was secret and unknown to him, and which was incident to the ordinary wear and tear of the platform, and was owing to partial decay underneath the plank which broke, and of the

stringer on which it rested, of which partial decay he had no knowledge or notice.

ID.—HYPOTHETICAL INSTRUCTION—QUESTION OF FACT.—An instruction which merely applies the law to hypothetical facts, and submits to the jury the question whether the facts hypothetically stated are true, is not an instruction as to question of fact.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WILLIAM R. DAINGERFIELD, Judge.

The facts are stated in the opinion.

*Sawyer & Burnett*, for Appellant.

There is no liability for latent defects incident to ordinary wear and tear of houses, or to negligence of builders, of which the owner had no notice, nor for injury which could not reasonably have been anticipated. (Wharton on Negligence, 823; Pollock on Torts, 36; *Southcote* v. *Stanley*, 1 Hurl. & N. 247; *Crafter* v. *Metropolitan Ry. Co.*, L. R. 1 Com. Pl. 300.)

*M. M. Estee*, and *Charles A. Shurtleff*, for Respondent.

The defendant was responsible for want of ordinary care of his property, and was bound to use reasonable care to keep it safe for those entering at his request. (Civ. Code, sec. 1714; Cooley on Torts, 605–07; 1 Thompson on Negligence, 307; *Sweeney* v. *Old Colony R. R. Co.*, 10 Allen, 373; 87 Am. Dec. 644; *Carleton* v. *Franconia etc. Co.*, 99 Mass. 217; *Currier* v. *Boston Music Hall*, 135 Mass. 416; *Flynn* v. *Central R. R. Co.*, 142 N. Y. 439, 445.) Ignorance of the defect is no excuse, and knowledge of it need not be shown. (*Lindsay* v. *Leighton*, 150 Mass. 288; 15 Am. St. Rep. 199.) Absence of ordinary care may be presumed from the defect which caused the injury. (*Cunningham* v. *Union Pac. Ry. Co.*, 7 West Coast Rep. 445.) The owner was liable for improper or negligent construction of the premises. (Civ. Code, sec. 3281; Gear on Landlord and Tenant, sec. 173; *Jones* v. *Friedenburg*, 66 Ga. 505; 42 Am. Rep. 86; *Mc-*

*Carthy* v. *York County Savings Bank,* 74 Me. 315; 43 Am.
Rep. 591; *Nash* v. *Minneapolis Mill Co.,* 24 Minn. 501;
31 Am. Rep. 349; *Carson* v. *Godley,* 26 Pa. St. 111; 67
Am. Dec. 404; *Curtin* v. *Somerset,* 140 Pa. St. 70; 23
Am. St. Rep. 220.)

VANCLIEF, C.—Action for recovery of damages for
personal injuries.

Plaintiff, being a servant of the City Transfer Com-
pany, of the city of San Francisco, called at the private
dwelling-house of defendant, at the latter's request, for
the purpose of carrying two trunks from there to the
railroad depot. After having taken the smaller trunk
to his wagon he returned for the larger trunk, which
was very heavy. Defendant then told him he would
not be able to carry that heavy trunk downstairs, and
offered to assist him; but plaintiff declined the proffered
assistance, and placed the trunk upon his back, saying
to defendant: "You put that young lady on top of this
trunk and I can take her down." He then went down
the inside stairs, passed out at the front door and down
the front steps to a platform about three steps above the
sidewalk. When he stepped down upon the platform,
the plank upon which he stepped broke, letting his leg
through the opening made by the break, and fracturing
one of the bones (fibula) at the juncture of the ankle.

The issues of fact were tried by a jury, whose verdict
was in favor of the plaintiff, and the judgment of the
court was in accordance with the verdict. The defend-
ant has appealed from the judgment and from an order
denying his motion for a new trial.

The evidence, without conflict, shows that the front
steps, including the platform which broke, was built for
defendant, about seven or eight years before the acci-
dent, by a carpenter and builder whose competency and
skill was in no degree impeached; that it was well con-
structed of first-rate material, which would ordinarily
wear sixteen to twenty years without repair; that it had
been repainted every year; that it appeared to defendant

and those who had passed over it to be perfectly sound and safe up to the time of the accident; and that the defendant had no knowledge that it was unsound, unsafe, or at all defective until after the accident. But an examination after the accident disclosed a partial decay (dry rot) of the under side of the plank that broke and of a stringer on which it rested, which was not apparent from the outside, and which could not have been discovered without making an opening through or under the vertical side of the steps sufficient to admit a person under the platform, which was only about one foot above the ground. It is not pretended by respondent that there was any defect in the construction of the steps or platform, except that he contends there was not sufficient ventilation under them; and upon this question the evidence was conflicting. On the part of defendant it was shown that the open space under the platform extended back to and connected with the open space under the house, and that the open space under the house was ventilated in the ordinary way; but on the part of plaintiff it was contended that there should have been ventilating holes immediately connected with the open space under the platform and steps. But there was no evidence that defendant had any knowledge or notice of the alleged deficiency of ventilation, nor that any other ventilation than that under the house was necessary.

At the request of defendant's counsel the court, properly I think, gave to the jury the following instruction: "The defendant is only bound to exercise the care which housekeepers or owners of houses of common prudence are accustomed to exercise; and if you find from the evidence that the defendant did exercise such care in and about keeping the platform in good condition, then your verdict will be in favor of the defendant."

Counsel for plaintiff contended that under the rule expressed in this instruction the defendant must be found guilty of negligence, in that he had not examined the under side of the platform for the purpose of ascer-

taining whether it was sound and safe, *this being the only negligence claimed to have been proved."*

In answer to this defendant's counsel contended that to have made any examination of the under side of the steps or platform within eight years after they were built, under the circumstances proved, and without any notice or indication that they were unsound or unsafe, would have been *extraordinary* care and vigilance on the part of the defendant, which the law does not require; and to this effect asked the following instruction, which was refused, on the express ground that it was a "charge as to fact":

"The latent defects which are either concealed in defective workmanship, or are incident to the ordinary wear and tear of houses, are among the casualties which no man can avoid without that extraordinary care and vigilance which the law does not impose. If you believe from the evidence that the platform through which the plaintiff broke was constructed in a good and substantial manner, and gave no indication of being unsafe up to the accident testified to, then I instruct you the defendant was under no legal obligations to have the said platform inspected from time to time; and if you find from the evidence that the defect in said platform was secret and unknown to defendant, and was incident to the ordinary wear and tear of said platform, then you will find a verdict for the defendant."

I think this instruction is substantially correct and should have been given.

In speaking of the liability of owners of private houses for the consequences of defects therein dangerous to invited visitors on lawful business, Mr. Wharton, in his book on Negligence, section 825, says: "For the question, when such liability is mooted in reference to such a visitor, is whether the proprietor exercised in his house the care which good housekeepers are accustomed to exercise. What is such care? Certainly, when we recollect the great varieties of habit and taste in this respect, all we can ask is that the house, to those

visiting it, should be free from those obvious defects of which an occupant, not an expert in mechanics, would be cognizant. Those latent defects which are either concealed in defective workmanship, or are incidental to the ordinary wear and tear of houses, are among those casualties which no man can avoid without the exercise of that extraordinary care and vigilance which the law does not impose." (Citing English cases.)

There can be no question that in such cases the law imposes the duty of only ordinary care, which is properly defined to be such as good housekeepers ordinarily exercise to avoid danger of personal injuries in their own private dwelling-houses. Nor do I think it questionable that an examination by the defendant of his stairs and platform at any time before the accident, for the purpose of detecting latent defects, under the circumstances and facts assumed and hypothetically stated in the requested instruction, would have been extraordinary care.

The only ground upon which the instruction was refused is that it instructs as to questions of fact which should have been submitted to the jury. But I do not so understand it. It merely applies the law to hypothetical facts, and submits to the jury the question whether the facts hypothetically stated are true. The questions of fact thus submitted were: 1. Whether the platform which broke had been constructed in a good and substantial manner; 2. Whether the defects therein, if any, were latent, and were unknown to defendant before the accident; 3. Whether the platform gave any indication of being unsafe before the accident. And, in case the jury should find the affirmative of the first two of these questions and the negative of the third, instructed, as legal conclusions, that it had not been the duty of the defendant before the accident to examine the platform for the purpose of discovering latent defects either in the workmanship or caused by ordinary wear, and that the verdict of the jury should be for the defendant. That these were simple conclusions

of law is unquestionable (Shearman and Redfield on
Negligence, secs. 52, 53); and that such conclusions
were correct appears not only from the above extract
from Wharton on Negligence, supported by English
cases, but from the following American cases : *Lunney* v.
*The Concord,* 58 Fed. Rep. 913; *Hobbs* v. *Stauer,* 62 Wis.
108; *De Graff* v. *New York etc. R. R. Co.,* 76 N. Y. 125;
*East St. Louis etc. Co.* v. *Hightower,* 92 Ill. 139; *Hoffman*
v. *Dickinson,* 31 W. Va. 152; *Warner* v. *Erie Ry. Co.,* 39
N. Y. 468; *Sjogren* v. *Hall,* 53 Mich. 275; *Mars* v. *Dela-
ware etc. Canal Co.,* 54 Hun, 625; *Chicago etc. Ry. Co.* v.
*Elliott,* 55 Fed. Rep. 949; *Loftus* v. *Union Ferry Co.,* 22
Hun, 33; 84 N. Y. 455; 38 Am. Rep. 533.    It should
be borne in mind, however, that the ultimate question
of law to be decided is whether it was the duty of the
defendant, under the circumstances proved, to examine
his platform for the purpose of ascertaining whether
there were latent defects in it; for, if such was not his
duty, his omission to make such examination was not
negligence in any degree, and the defendant was en-
titled to a verdict (*Smith* v. *Whittier,* 95 Cal. 279);
and whether or not such was his duty depends entirely
upon whether or not he had notice of facts which would
induce a man of ordinary prudence to suspect the exist-
ence of a latent defect in consequence of which danger
of injury to person or property might be reasonably
apprehended; and when, in such a case, the facts, of
which one charged with negligence had notice, are
known and undisputed, the question of duty to examine
for latent defects is a pure question of law, though it
may involve a question as to the degree of care required,
which is also a question of law when the facts are given.
(*Stratton* v. *Central etc. Horse Ry. Co.,* 95 Ill. 25; Sack-
ett on Instructions to Juries, 15.)    In accordance with
these principles, courts grant nonsuits and direct ver-
dicts in actions for negligence, whether the negligence
in question be that of the defendant or contributory
negligence of the plaintiff. (*Glascock* v. *Central Pac. R. R.*

Co., 73 Cal. 137; Orcutt v. Pacific Coast Ry. Co., 85 Cal. 291; Smith v. Occidental S. S. Co., 99 Cal. 462.)

Counsel for respondent have cited many cases, none of which seems to be relevant. Only those of them, however, from which counsel have copied extracts, without stating the facts bearing on the point decided, need special notice.

In Carleton v. Franconia Iron etc. Co., 99 Mass. 216, cited for respondent, the unsafe condition by which plaintiff was injured, and of which he was not warned, was known to the defendant.

In Currier v. Boston Music Hall Assn., 135 Mass. 414, in which it was held that if defendant neglected his duty to keep the hall in a safe condition, so that in fact it was unsafe when plaintiff entered it, "defendant's knowledge or ignorance of the defect was immaterial," the only defects complained of were a depression in the floor and that the hall was not sufficiently lighted. These defects, if they existed, must have been patent to all who entered the hall, and it was not questioned that they were so. Had the hall been properly lighted, the depression in the floor would have been apparent, so that the negligence which was the immediate cause of the injury was the omission of the duty to light the hall, which duty was not questioned.

In Looney v. McLean, 129 Mass. 33, 37 Am. Rep. 295, "it was admitted that the defendant knew that the stairs (by the breaking of which plaintiff was injured) were greatly decayed and unsafe, and there was no evidence that he cautioned or notified the plaintiff that they were so."

In Holmes v. Drew, 151 Mass. 578, the only question was whether the public had been invited to use a sidewalk on defendant's private land.

In Gill v. Middleton, 105 Mass. 477, 7 Am. Rep. 548, it was assumed to have been the duty of defendant, arising from contract, to use ordinary skill in repairing a privy so as to make it safe. He failed to use such skill, in consequence of which the plaintiff was injured. The

defendant asked the trial court to instruct the jury
" that the defendant is not liable, unless he knew or be-
lieved that the repairs which he made were insufficient,
and that the premises were still unsafe and dangerous."
The appellate court overruled an exception to the re-
fusal of this instruction, saying: " His undertaking
required at least the skill of an ordinary mechanic, and
his failure to furnish it, either because he did not pos-
sess or neglected to use it, would be gross negligence."
While this implies that the knowledge or belief of the
defendant in that case was immaterial, it is obvious that
it does not touch the question involved in the case at
bar.

In *Lindsey* v. *Leighton*, 150 Mass. 285, 15 Am. St. Rep.
199, the plaintiff was injûred by a defect in a platform
at the head of stairs which the defendant was in duty
bound to repair and keep in safe condition.   The de-
fect was that a board in the platform had become loose.
The defendant asked the court to instruct the jury: "If
the jury find that there was such defect, but that it
was not known to the defendant at or previous to the
accident, then they must find for the defendant."   The
instruction was refused, and the appellate court over-
ruled an exception to the refusal of it.   There was no
evidence that the defect was latent, nor that the defend-
ant had no knowledge of it.   The plaintiff had made
a *prima facie* case by proving the defect and consequent
injury; and unless there was rebutting evidence tending
to show that the defect was latent, and that the defend-
ant was ignorant of it, the instruction was properly de-
nied, because not applicable to the evidence.   For like
reasons the case of *Camp* v. *Wood*, 76 N. Y. 92, 32 Am.
Rep. 282, is not in point.

As considerable importance has been attributed to the
fact that plaintiff was invited to remove the trunks from
defendant's house, it should be observed that he was not
invited to carry the heavy trunk downstairs, but that
defendant protested against his doing so; and also that
plaintiff did not accept defendant's invitation gratui-

tously. It was the business of plaintiff's employer to carry trunks for hire. The parties were equally interested in the transaction.

I think the order and judgment appealed from should be reversed, and a new trial granted.

HAYNES, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion, the order and judgment appealed from are reversed, and a new trial granted.

HENSHAW, J., TEMPLE, J., McFARLAND, J.