[Civ. No. 3441. Third Appellate District.—March 5, 1928.]

C. C. FINNEGAN, Respondent, v. HALE GIFFEN et al., Appellants.

JOHN Q. FINNEGAN, etc., Respondent, v. HALE GIFFEN et al., Appellants.

Butler, Van Dyke & Desmond for Appellants.

Ralph H. Lewis and Martin I. Welsh for Respondents.

PLUMMER, J.—These actions were brought to recover damages for injuries suffered by the plaintiff, John Q. Finnegan, while riding as a guest upon a motorcycle driven by the defendant Hale Giffen, and also for medical attention, etc., were tried as one action and are presented upon one record.

The injury constituting the basis of this action was suffered by the plaintiff John Q. Finnegan on September 9, 1924, while riding on a motorcycle driven, as just stated at the intersection of Eleventh and H Streets in the city of Sacramento. It may be here stated that in the section of Sacramento just mentioned the numbered streets run approximately north and south, and the lettered streets running easterly and westerly intersect the numbered streets at right angles. The plaintiff, John Q. Finnegan and the defendant Hale Giffen were minors at the time of the collision, Finnegan being of the age of thirteen years and Giffen of the age of fifteen years, or, as stated more accurately, Finnegan lacked six days of being fourteen years of age and Giffen was fifteen years and six months old. Hale Giffen had applied for a license to operate a motorcycle, and his father, the defendant R. B. Giffen, had signed his application. It is by virtue of this situation that R. B. Giffen was held as the party responsible in this action. No issue is raised as to the amount of damages awarded by the court, nor as to the amount allowed to cover expenditures for

medical services, etc., by the plaintiff, C. C. Finnegan. Following the statement in appellants' brief, which appears to be correct as we examine the record, John Q. Finnegan lived near the intersection of 19th and H Streets, and Hale Giffen lived between 18th and 19th Streets on F Street, approximately two blocks from the residence of the plaintiff John Q. Finnegan. The boys had known each other for some time. On the day in question Hale had been working on his motorcycle, and John was visiting with him while Hale was so at work. Hale's aunt requested Hale to go to a grocery-store at 8th and G Streets, and the two boys rode there on the motorcycle. There is a conflict in the evidence as to whether Hale asked John to go with him or whether John asked Hale for permission to go. The boys went to the grocery-store, obtained a parcel, mounted the motorcycle and started home. Hale was riding on the seat of the motorcycle and operating the same. John was seated astride the gas-tank forward of the seat and back of the handle-bar. The boys proceeded north on 8th Street from G to H, turned into H Street and ran east thereon to 11th Street. The rate of speed was the subject of sharply conflicting testimony. Several witnesses testified that the boys went into the intersection of H and 11th Streets at a speed of about forty-five miles per hour. Others testified that the rate of speed was from fifteen to twenty miles an hour. The territory around H and 11th Streets is a residence district and close to a populous section of the city. As the motorcycle entered the intersection of H and 11th Streets, a truck running north on 11th Street passed in front of them. The motorcycle was swerved slightly to the right and passed the rear of the truck, and then ran into the rear end of an automobile parked on the south side of H Street some twenty-five feet east of the east line of 11th Street. In this collision the plaintiff John Q. Finnegan suffered the injuries for which judgment in damages against the defendant was entered in this case. It is from this judgment that the defendants appeal.

Only one ground for reversal is urged upon our attention by the appellants, to wit: That the court misdirected the jury in giving two certain instructions. The first instruction complained of is in the following words: ''The jury is instructed that it is and was, at all times involved in this

action, unlawful for one to operate a motorcycle at a rate of speed greater than twenty miles per hour in a residence section." The second instruction, which we need not quote in full, is in substance a statement to the jury that in considering whether John Q. Finnegan was guilty of contributory negligence, the jury should consider all the facts and circumstances of the case, also his age, experience, intelligence, and ability to appreciate the danger to which he was subjected, if any, at the time of the accident. The care which a child is required to exercise is that degree of care which ordinarily prudent children of his age, maturity, and capacity, under similar circumstances, ordinarily exercise and possess. And then, further, that if he did not do so, he would be guilty of negligence, and if that contributed to his injury, plaintiffs could not recover.

Appellants, in urging error on the part of the court in instructing the jury as to a speed greater than twenty miles per hour being unlawful, call our attention to section 113 of the Motor Vehicle Act (Stats. 1923, p. 553), as it read at the time mentioned herein. Parenthetically, it may be here stated that it was admitted that the situs of the collision was a residence district as defined by the Motor Vehicle Act. The section of the Motor Vehicle Act just referred to reads as follows: "Subdivision (a) A person driving a vehicle on the public highways of this State shall drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and no person shall drive a vehicle upon a public highway at such a speed as to endanger the life, limb and property of any person. Subdivision (b) Subject to the provisions of Subdivision (a) of this Section, and except in those instances where a lower speed is specified in this Act, it shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding the following: (1) Fifteen miles an hour in traversing a grade crossing of any steam, electric or street railway when the driver's view is obstructed, etc. (2) Fifteen miles an hour in traversing an intersection of highways when the driver's view is obstructed, etc. (3) Fifteen miles an hour in traversing or going around curves, etc. (4) Fifteen miles an hour when passing a school, etc. (5) Fifteen miles an hour in any business district as defined herein. (6) Twenty miles an

hour in a residence district as defined herein. (7) twenty-five miles an hour under all other conditions. Subdivision (c) In all charges for a violation of this Section speeds in excess of those set forth in Subdivision (b) of this Section shall be taken as *prima facie* but not as conclusive evidence of a violation of this Section." Basing their argument upon this section, it is contended that the trial court was in error in instructing the jury in the language which we have quoted, and that the court should have instructed the jury that traveling at a rate of speed in excess of twenty miles an hour in a residence district was only *prima facie* evidence of a violation of the section, but not conclusive evidence of such violation. It is further contended that there is no absolute limitation or fixed speed in excess of which it may be said that one is traveling unlawfully. In other words, the statute simply says it is lawful to drive in certain places at fifteen miles an hour, in other places at twenty miles an hour, and at the date of the collision under consideration, at still other places, at the rate of thirty-five miles per hour, and that the rate of speed, whether it be fifteen, twenty, or thirty-five miles per hour, is not the measure of negligence in the propelling of a motorcycle or automobile, but that if a greater speed is attained under any of the conditions named, it is only *prima facie* evidence of a wrongful act on the part of the person so propelling the motorcycle or automobile. In other words, that the section means only what it says in subdivision (a) thereof, that at all times, a person driving a vehicle on a public highway shall drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and that no person shall drive a vehicle upon a public highway at such a rate of speed as to endanger the life, limb or property of another person.

 We appreciate the force of appellants' argument, but for the reasons hereinafter stated, the decision in this case does not necessitate a construction of section 113 of the Motor Vehicle Act relative to the propositions advanced by the appellants. The jury in this case was amply warranted in finding that Hale Giffen was driving the motorcycle, upon which the plaintiff John Q. Finnegan was riding as a guest at the time of the collision, at such a rate of speed as to endanger life, limb, and property. The evi-

dence, if believed by the jury—and the verdict shows that it did accept such testimony as true—leads to the conclusion that the motorcycle was traveling at a speed between twenty-five and forty miles an hour just immediately preceding the swerving to the right to escape the truck moving northward on Eleventh Street, and its momentum was not sufficiently lessened to enable the driver thereof to escape collision with the standing automobile twenty-five feet to the east of the east line of Eleventh Street as hereinbefore stated. The fact that the parked automobile with which the motorcycle collided, was standing on the south side of H Street twenty-five feet east of the east line of Eleventh Street, presented circumstances for the jury to take into consideration, and from which the inference of negligence might very properly be drawn, as the jury might very well reason that there was ample distance within which to have changed the direction of the motorcycle sufficiently to avoid a collision had it not been traveling at an excessive rate of speed.

The motorcycle was exclusively under the control and direction of the defendant Hale Giffen. The plaintiff was riding as a guest, which brings the case within the principle announced by this court in *Brown et al.* v. *Davis,* 84 Cal. App. 180 [257 Pac. 877], where it is held that the presumption of negligence arises when an injury is suffered by a guest riding in an automobile which, if propelled and controlled in the usual and ordinary manner, an accident would not have occurred and no injury would have been inflicted. (See, also, *Morris* v. *Morris,* 84 Cal. App. 599 [258 Pac. 616].) We may also state that the testimony shows that the motorcycle in its course ran over a portion of the cement runway from the pavement to the curb, and came in contact with the curbing before colliding with the automobile. In brief, it may be said the testimony set forth in the record is amply sufficient to support the verdict. The only question remains, did the defendants suffer any injury by reason of the instruction given by the court, assuming, for the purposes of what is hereinafter stated, that the wording of the instruction was erroneous in that it did not include the words "*prima facie*"?

A careful reading of the instructions given by the court in this case discloses that the jury was nowhere instructed by the court that the driving of a motorcycle, at a rate of

speed greater than twenty miles per hour, raised either the presumption or inference of negligence, nor was the instruction objected to in any manner tied up with any other instruction in the case. The jury were not instructed that if any injury occurs while one is engaged in some unlawful undertaking, and the injury results as a consequence thereof, that such unlawful act is negligence *per se*. There is not a word in any of the instructions given by the court to the effect that driving at a greater rate of speed than twenty miles per hour in a residence district constitutes negligence, nor is there a word in the instructions to the jury that they may either infer or presume negligence from the fact of driving at a greater rate of speed than twenty miles per hour in a residence district. The instruction objected to simply stands alone. Thus, irrespective of whether it is a correct or incorrect statement of the law, we do not see how it could have had any possible influence upon the jury in arriving at its decision. The court very fully instructed the jury that negligence was a question of fact; that the jury was the exclusive judge of the facts; that before a verdict could be rendered for the plaintiff the jury must find that the defendant Hale Giffen was propelling his motorcycle at a negligent rate of speed, and that his negligence was the proximate cause of the injury, without any contributory negligence whatsoever on the part of plaintiff John Q. Finnegan. Every element of the law of negligence necessary to charge the defendant Hale Giffen was very carefully and fully explained to the jury, and as we have said, in such explanation no attempt was made whatever to tie up to or apply the instruction relative to speed, the giving of which is assigned as error in this case and as sufficient ground for reversal.

In view of what we have just stated, section 4½ of article VI of the state constitution, prohibiting the reversal of cases on account of erroneous instructions where prejudice does not follow, applies, and therefore we must hold that irrespective of whether the appellants' contention relative to the true interpretation of section 113 of the Motor Vehicle Act is or is not correct, and whether the instruction objected to is or is not a correct statement of the law, it can be given no bearing upon the determination of this cause.

No instruction was requested by the defendants relative to the age of Hale Giffen, nor was there any suggestion that he did not fully understand the perils of excessive speed.

█ As the circumstances are disclosed by the record before us, section 41 of the Civil Code appears applicable. That section reads: "A minor or person of unsound mind, of whatever degree, is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrongful." In other words, the defendant Hale Giffen in this case, even though a minor, is liable for the damages done by him, but would not be liable for exemplary damages were it to be conceded that he was so young as not to know that what he was doing was wrong. On the other hand, when it comes to a question of contributory negligence, the common law applies, and a general summary thereof, taken from 29 Cyc. 535, supports the instruction given by the court, and while a minor may be charged with contributory negligence as shown by the citations which we are about to give, it is proper to instruct the jury on this subject, that it may take into consideration the age and capacity of the minor. We quote from 29 Cyc., page 535, as follows: "Prudence on the part of a child might be negligence in an adult, and a child of immature years is not required to exercise the same degree of care and caution to avoid injury as is required of adults under similar circumstances. The degree of care required has been variously stated as a care reasonably to be expected of a child of his age and discretion, maturity and capacity, youth and inexperience, mental and physical capacity, age and intelligence or intellectual capacity. . . . It is said that there is no inflexible rule by which to determine the capacity of children for observing and avoiding danger, but a child is bound to use the reason he possesses and exercise the degree of care and caution of which he is capable." All of these different propositions are supported by numerous authorities which we need not cite, and show that it was proper on the part of the court to instruct the jury that such matters should be taken into consideration when determining whether or not John Q. Finnegan was guilty of contributory negligence, and for that reason could not recover. We may also quote from 31 C. J. 1093: "A minor may reasonably be expected to exercise that degree of care

which a person of his age, intelligence, capacity, discretion and experience would naturally and ordinarily use.'' This is just what the court in effect instructed the jury.

Finding no prejudicial error in the record, it follows that the judgments of the trial court should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.