[No. F010185. Fifth Dist. Sept. 7, 1989.]

LANCE GARFOOT, Plaintiff and Appellant, v.
JAMES RAY AVILA et al., Defendants and Respondents.

**COUNSEL**

Aron & Newman and Murray M. Aron for Plaintiff and Appellant.

Sandell, Young, Hager, Trippel & Geisel and Timothy P. Geisel for Defendants and Appellants.

OPINION

BAXTER, J.—

STATEMENT OF FACTS AND PROCEEDINGS BELOW

Plaintiff filed a negligence action against defendants for personal injuries sustained from a vehicle/pedestrian accident. Defendants admitted liability, and a jury trial was held on the issue of damages. Damages were sought for past and future medical expenses, lost wages, and pain and suffering.

Plaintiff's counsel made a "per diem" argument to the jury for pain and suffering damages pursuant to *Beagle* v. *Vasold* (1966) 65 Cal.2d 166, 180-182 [53 Cal.Rptr. 129, 417 P.2d 673]. This argument suggests that the jury award a sum for each day, or other time period, that pain is experienced, the amount varying according to the nature and intensity of the suffering during successive time periods. Counsel suggested a pain and suffering award of $178,000, calculated by multiplying $16 per day times plaintiff's life expectancy of 30.5 years. Defendants' counsel did not specifically respond to the per diem argument or suggest a specific amount of damages. Both counsel urged the jury to award reasonable damages.

The court instructed the jury that compensatory damages include damages for pain and suffering. It defined damages for pain and suffering as, "[r]easonable compensation for any pain, discomfort, fears, anxiety and other mental and emotional distress suffered by the plaintiff and of which his injury was a [legal] cause [and for similar suffering reasonably certain to be experienced in the future from the same cause]." (BAJI No. 14.13 (1986 rev.), italics added.) The court then instructed the jury on the manner of determining such damages.

"*No definite standard* [*or method of calculation*] *is prescribed by law by which to fix reasonable compensation for pain and suffering.* Nor is the opinion of any witness required as to the amount of such reasonable compensation. [Furthermore, the argument of counsel as to the amount of damages must not be considered by you as evidence of reasonable compensation.] In making an award for pain and suffering you shall exercise your authority with calm and reasonable judgment and *the damages you fix shall be just and reasonable in the light of the evidence.*" (BAJI No. 14.13, *supra*, italics added.)

The jury, by a nine-to-three vote, awarded plaintiff lump sum damages of $53,160.48. Plaintiff's counsel briefly discussed the verdict with three jurors in the presence of defendants' counsel. The jurors revealed that they

calculated pain and suffering on a per diem basis and reduced the product to present cash value because they thought it was required by the instructions. Plaintiff's counsel then sought and obtained the court's permission to contact individual jurors. Declarations were obtained from the three jurors who voted against the verdict and from six of the jurors who voted for it.

Plaintiff filed motions for (1) new trial under Code of Civil Procedure section 657, subdivisions 1, 2, and 5, claiming irregularity of jury proceedings, jury misconduct and inadequate damages, and (2) additur, under Code of Civil Procedure section 662.5.

The declarations represent that the 9 jurors voting for the verdict calculated pain and suffering on a per diem basis of 50 cents an hour for 16 hours per day for 30.5 years. The product of this calculation, $89,060, was then reduced to present cash value and made a part of the lump sum damage award. The jury believed this reduction was required. Juror Daren R[ ]'s declaration states, in pertinent part: "That I personally calculated the reduction of the pain and suffering [$89,060] plus future medicals [medication of $17,592.27 and office visits of $1,523.50] . . . to present cash value using the chart assuming a 6-1/2 percent rate. I then added the past medicals [$4847.19] and wage loss [$1062.68] and came up with the $53,160.48 figure."

The three dissenting jurors "wanted to give Plaintiff more money." However, none of the declarations alleged the damages awarded were unreasonable.

On January 7, 1988, a hearing was held on plaintiff's motions for new trial and additur. Plaintiff argued that the juror declarations were admissible to impeach the verdict pursuant to *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022]. He also argued that the jury's reduction of per diem pain and suffering to present cash value conflicted, by implication, with the instructions given. This argument is predicated on the fact that the jury was explicitly instructed to reduce other future losses to present cash value (BAJI No. 14.12 for future wage loss and BAJI No. 14.10 for future medical expense), but was not instructed to do so for the pain and suffering (BAJI No. 14.13). Plaintiff contended that the alleged jury misconduct rendered the judgment for damages reversible as a matter of law.

Defendant objected to admission of the declarations pursuant to Evidence Code section 1150, subdivision (a), claiming they impermissibly reflected the mental processes of the jury.

The court denied the motions for new trial and additur. The court found that the declarations demonstrated that the present value table was used to reduce the per diem pain and suffering calculation, and that statements concerning its use were verifiable and, therefore, admissible under Evidence Code section 1150, subdivision (a). However, declarations as to the jury's alleged "belief" that they had to reduce the calculation of per diem pain and suffering to present value were ruled inadmissible since this reflected the mental processes of the jury.

The court also held that the jury's reduction of the product of the per diem pain and suffering calculation was not incorrect as a matter of law to justify a new trial. BAJI No. 14.13 only requires that the award be reasonable and does not fix a definite standard of calculation. Supplemental briefing failed to reveal definitive California authority on the issue of discounting damages for future pain and suffering. The court determined that it was proper for the jury to reduce the award to present value because plaintiff was awarded a lump sum to compensate for all future pain and suffering. The court determined that the damages awarded were not inadequate and denied the additur.

Plaintiff appeals the damage award, arguing that the jury's reduction of the per diem pain and suffering calculation to present value was improper and that the damages awarded were inadequate as a matter of law.

### DISCUSSION

### DID THE COURT PROPERLY ADMIT THE JUROR DECLARATIONS?

Plaintiff's contentions on appeal are all predicated on alleged jury misconduct. The evidence of misconduct is contingent on admissibility of the juror declarations, which describe their method of calculating the damage award for future pain and suffering. The admissibility of the declarations is governed by Evidence Code section 1150: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, *of such a character as is likely to have influenced the verdict improperly.* No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.

"(b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict." (Italics added.)

Under Evidence Code section 1150, subdivision (a), evidence of improper jury conduct is not admissible to impeach the verdict unless it "is likely to have influenced the verdict *improperly.*" (Italics added.) The primary issue then is whether evidence of the method used by a jury in calculating pain and suffering damages can be shown to have improperly influenced the verdict.

A plaintiff in a personal injury action is entitled to recover damages for pain and suffering proximately caused by the defendant, and the calculation is left to the "subjective discretion" of the jury. (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 103 [160 Cal.Rptr. 733, 603 P.2d 1329].) The jury is specifically instructed on the absence of a definite method of calculating pain and suffering damages. The only guide provided by the instructions is that the award must be "just and reasonable" in light of the evidence. (BAJI No. 14.13, *supra.*)

A jury's relatively unfettered authority and responsibility to calculate damages for pain and suffering was succinctly described by the Supreme Court in the very case that authorized per diem arguments by counsel.

"One of the most difficult tasks imposed upon a jury in deciding a case involving personal injuries is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering. No method is available to the jury by which it can objectively evaluate such damages, and no witness may express his subjective opinion on the matter. (See 7 Wigmore, Evidence (3d ed. 1940) § 944, pp. 55-56.) In a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy. As one writer on the subject has said, 'Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable. . . . The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury. . . .' (McCormick on Damages, § 88, pp. 318-319.)" (*Beagle* v. *Vasold, supra,* 65 Cal.2d 166, 172.)

The court *at plaintiff's request* properly instructed the jury in measuring pain and suffering damages by giving BAJI No. 14.13, *supra,* which provides, in relevant part: "No definite standard [or method of calculation] is prescribed by law by which to fix reasonable compensation for pain and suffering. . . . In making an award for pain and suffering you shall exercise your authority with calm and reasonable judgment and the damages you fix shall be just and reasonable in the light of the evidence."

■ ■■ ■ ■   Since the law does not prescribe definite methods for the jury to calculate reasonable compensation for pain and suffering, it would be a contradiction in terms to conclude that a jury's utilization of a particular method not expressly prohibited by law[1] could influence the verdict improperly. The critical issue subject to review by the trial and appellate courts is whether the jury's award for pain and suffering is just and reasonable as required by law, not the precise method used to achieve that result.

The policy reasons for restricting the use of juror declarations to impeach verdicts were clearly and forcefully expressed by Justice Mosk in a concurring opinion joined by Justice Lucas.

"I must express my apprehension at an incipient trend, that of losing parties attempting to impeach jury verdicts. We see this in numerous appeals and petitions for review based on juror affidavits. Giving such appeals and petitions any credence prevents the finality of judgments, places additional burdens on the judicial process, and contributes to disenchantment with the tort system.

"Most juror affidavits . . . delve into the subjective concerns of the jurors during their deliberations. When deference is given to such affidavits, encouragement is given to opposing counsel in future cases to engage in postverdict competition to obtain juror affidavits revealing discussions that took place behind the closed doors of the deliberation room. Generally the party with the most resources will win that contest. If affidavits purportedly relating jury discussions are permissible, in the interest of accuracy we may as well install recording devices in jury rooms." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 575 [224 Cal.Rptr. 664, 715 P.2d 624] (conc. opn. of Mosk, J., and Lucas, J.).)

Plaintiff's reliance on *Krouse* v. *Graham, supra,* 19 Cal.3d 59, is misplaced. In *Krouse,* four jurors signed declarations that the verdict in an action for personal injuries was inflated by $30,000 to compensate plaintiff for her attorney fees. The court noted that attorney fees are not recoverable in personal injury actions and that "[a]n express agreement by the jurors to include such fees in their verdict, or extensive discussion evidencing an implied agreement to that effect, constitutes misconduct requiring reversal. [Citations.]" (*Id.* at p. 81.) The trial court was directed to admit the declarations and to reconsider defendant's motion for a new trial. (*Id.* at pp. 81-83.)

---

[1] A verdict arrived at by chance or quotient is prohibited. (Code Civ. Proc., § 657, subd. 2; *Buhl* v. *Wood Truck Lines* (1944) 62 Cal.App.2d 542, 544-545 [144 P.2d 847]; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 361, pp. 362-363.)

A deliberate inflation of damages for personal injuries to stealthily reimburse a party for estimated legal fees that are clearly not legally compensable is "conduct . . . likely to have influenced the verdict improperly" under Evidence Code section 1150. The court in *Krouse* properly concluded the declarations were admissible. In contrast, the declarations in the instant case merely describe the method used by the jury to calculate reasonable damages for pain and suffering. The declarations did not represent that the damages awarded were unreasonable. Since the jury was properly instructed at plaintiff's request that "[n]o definite standard [or method of calculation] is prescribed by law by which to fix reasonable compensation for pain and suffering[,]" we conclude that the actual method used could not improperly influence the jury under Evidence Code section 1150 unless expressly prohibited by law. The jury was in effect told "to fix reasonable compensation for pain and suffering" unrestrained by "definite standard[s] [or method[s] of calculation] . . . ." (BAJI No. 14.13, *supra*.) That is exactly what the jury did.

Plaintiff's basic contention is that a jury's calculation of pain and suffering should never be reduced to present value, even if predicated on plaintiff counsel's per diem argument, and that such a reduction causes the award to be unreasonable as a matter of law. Not unexpectedly, defendants contend that discounting a calculation for pain and suffering to present cash value is consistent with common sense and principles of fairness. Both would impose their respective methods of calculation on juries in contravention to the basic principle of leaving the pain and suffering computation to the "subjective discretion" of the jury. (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles, supra,* 26 Cal.3d 86, 103; BAJI No. 14.13, *supra.*) We are not prepared to invade the province of juries by prescribing the methods they must follow in determining reasonable compensation for pain and suffering.

Pain and suffering, by definition, is an abstract concept. It is not readily calculable through a convenient mathematical formula. Evidence of its precise monetary equivalent cannot be definitively presented as if it was past medical expenses or wages lost due to an injury. Indeed, the jury is only instructed to award a "reasonable" amount, that a definite standard or method of calculation does not exist, and argument urging a particular calculation or amount must not be considered evidence.

We are aware of the line of cases interpreting Evidence Code section 1150, subdivision (a) which permit an examination of "objective" facts that improperly influenced verdicts. These cases have held that jurors are competent witnesses to prove objective facts "open to sight, hearing, and the other senses" to impeach a verdict. (*People* v. *Hutchinson* (1969) 71

Cal.2d 342, 350 [78 Cal.Rptr. 196, 455 P.2d 132].) Examples of objective facts include the intrusion of a bailiff into jury deliberations (*People* v. *Hutchinson, supra,* 71 Cal.2d 342); inclusion of an alternate juror in deliberations (*People* v. *Valles* (1979) 24 Cal.3d 121 [154 Cal.Rptr. 543, 593 P.2d 240, 15 A.L.R.4th 1116]); contacting an outside attorney for advice (*People* v. *Honeycutt* (1977) 20 Cal.3d 150 [141 Cal.Rptr. 698, 570 P.2d 1050]); and reading a novel during testimony (*Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388 [185 Cal.Rptr. 654, 650 P.2d 1171]). We find it unnecessary to determine what facts contained in the declarations are objective versus subjective since the conduct complained of was permissible within the discretion of the jury.

We conclude that the juror declarations are totally inadmissible under Evidence Code section 1150, subdivision (a), and that there is no evidence of juror misconduct. Since plaintiff's remaining issues on appeal are predicated on such evidence, it is unecessary to address them. Plaintiff's total damage award of $53,160.48 is not inadequate as a matter of law. (*Sexton* v. *Key System Transit Lines* (1956) 144 Cal.App.2d 719, 722 [301 P.2d 612].)

### DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

Martin, Acting P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied November 21, 1989.